UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADAN SANCHEZ SANCHEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>ULTIMO, LLC D/B/A MALBEC RESTAURANT., *et al.*,<br><br>    Defendants. | Case No. 19-cv-3188-MJS |

## MEMORANDUM OPINION

In this case, Plaintiff Adan Sanchez Sanchez ("Sanchez") sued his prior employer, Ultimo, LLC d/b/a Malbec Restaurant ("Malbec"), and the restaurant's owner, Felix Nelson Ayala ("Ayala"), for violations of the Fair Labor Standards Act ("FLSA"), the D.C. Minimum Wage Act ("DCMWA"), and the D.C. Wage Payment and Collection Law ("DCWPCL"). Sanchez claimed Defendants wrongfully denied him overtime wages throughout his employment by improperly treating him as an exempt employee. The case ultimately proceeded to a bench trial before former Magistrate Judge Robin M. Meriweather, who ruled in favor of Sanchez and against Defendants, awarding Sanchez nearly $450,000 in unpaid overtime wages and liquidated damages. Now, Sanchez moves for an award of attorney's fees and costs against Defendants as the prevailing party. (ECF Nos. 54 & 66.) For the reasons below, the Court will **GRANT** the motion.

1

## BACKGROUND

Sanchez worked at Malbec—an Argentinian steakhouse restaurant in the Dupont Circle neighborhood of Washington, D.C.[1]—from December 2015 through August 2019. He was "in charge of the kitchen," working as a "chef" or "kitchen manager." Sanchez's claims in the case sprung from the fact he routinely worked more than 40 hours per week but was not paid overtime wages. There was never any real dispute about those facts. Everyone agreed Sanchez generally worked more than 40 hours per week without overtime pay—Defendants included. But the parties disagreed about the legality of those facts, at least on the specific facts of this case. Sanchez insisted Defendants' failure to pay him overtime wages was unlawful. Defendants disagreed. According to Defendants, Sanchez was never eligible for overtime pay because his position fell within an overtime exemption under federal and D.C. law.

Following discovery, both sides moved for summary judgment, which Judge Meriweather largely denied except on two discrete issues: (1) ruling, in Defendants' favor, that the FLSA did not apply to Sanchez's position during 2016 and 2017 (but finding that the FLSA *did* apply during 2018 and 2019); and (2) ruling, in Sanchez's favor, that Ayala qualified as an "employer" for purposes of joint and several liability. (ECF No. 25.) From there, the case proceeded to a two-day bench trial, and Judge Meriweather ultimately issued findings of fact and conclusions of law in favor of Sanchez and against Defendants. *Sanchez v. Ultimo, LLC*, 2024 WL 3633696 (D.D.C. Aug. 2, 2024.) Judge Meriweather found that Defendants failed to carry their burden to establish that Sanchez was an exempt employee under the FLSA or D.C. law, and she determined Sanchez was owed damages for unpaid overtime for the full period requested—2,770 hours total between

---

[1] It appears Malbec is no longer in business. *See* https://www.malbecboutiquestk.com ("We are writing to you with a heavy heart to announce that Malbec Boutique Argentine Steakhouse will be closing its doors for the last time on 12/30/2023.") (last visited April 7, 2025).

October 2016 and April 2019—totaling $112,102.50. *Id.* at *6–8. Judge Meriweather separately awarded liquidated damages under the DCWPCL in the amount of $336,307.50, resulting in a total award to Sanchez of $448,410. *Id.* at *8–9. Finally, Judge Meriweather ruled that an award of "attorney's fees and costs to the prevailing party is mandatory under the FLSA and DCMWA" and directed Sanchez to file an appropriate petition on that issue. *Id.* *9.

Sanchez did so. A few weeks later, he filed the present motion for attorney's fees and costs—accompanied by detailed billing records and other supporting documentation—seeking $463,626.63 in attorneys' fees and $8,946.93 in costs. (ECF No. 54.) After the motion was briefed, the case was reassigned to the undersigned following Judge Meriweather's appointment to the Court of Federal Claims. Around that same time, Defendants engaged new counsel and sought leave to file a "supplement" to their original opposition. (ECF Nos. 61, 61-2.) The Court allowed that filing but gave Sanchez the opportunity to file a response, which he did. (Dec. 20, 2024 Min. Order; ECF No. 66.) In addition to addressing Defendants' substantive arguments, Sanchez's latest brief adjusted the amount of the requested fee award to: (a) include the additional fees incurred in preparing the fee petition, including by responding to Defendants' supplemental filing; and (b) incorporate the latest hourly rates. As such, Sanchez now seeks a total of $542,789.70 in attorney's fees and $8,946.93 in costs. The matter is fully briefed and ripe for decision.[2]

## LEGAL STANDARD

The FLSA and the DCMWA require the Court to award reasonable attorney's fees and costs to a prevailing plaintiff. The FLSA provides that a court "shall … allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). And the

---

[2] Because the issues are adequately presented by the parties' written submissions—including supplemental filings, as noted—the Court exercises its discretion to decide the matter without a hearing. LCvR 7(f).

DCMWA provides that a court "shall … allow costs of [an] action, including costs or fees of any nature, and reasonable attorney's fees, to be paid by the defendant." D.C. Code § 32-1308(b)(1).

"The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 105 (D.D.C. 2015) (quoting *Blum v. Stenson,* 465 U.S. 886, 888 (1984)). The applicant "bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates[.]" *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). This requires providing "sufficiently detailed information about the hours logged and the work done ... based on contemporaneous time records," *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982), and demonstrating that the hourly rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," *Ventura*, 134 F. Supp. 3d at 105 (citing *Kattan by Thomas v. Dist. of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993)). "When awarding attorneys' fees, federal courts have a duty to ensure that claims for attorneys' fees are reasonable." *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1265 (D.C. Cir. 1993). But courts have also long recognized that "a request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

## DISCUSSION

At the outset, Defendants do not disagree that Sanchez is entitled to *some* award of fees and costs as the prevailing party. And for good reason: Sanchez prevailed on his claims at trial. But Defendants do press several arguments—across their two briefs—as to why the Court should reduce the amount of fees requested and instead limit the award to no more than about $130,000 total. First, Defendants contest the hourly rates proposed by Sanchez as too high. Second,

4

Defendants argue for a downward adjustment because of what they call Sanchez's "limited success" at trial. Finally, Defendants mount a handful of more specific challenges to particular categories of legal work undertaken on Sanchez's behalf. None of these arguments prevails.

## I.  Reasonableness of Sanchez's Proposed Rates

Start with the hourly rates. Sanchez asks the Court to award fees based on the "LSI *Laffey* matrix," a widely used fee matrix designed to reflect prevailing market rates in the community. Defendants say the Court should reject the LSI *Laffey* rates as "inappropriate" in this case because they are "more than double what Plaintiff's counsel charge to normal fee-paying clients." (ECF No. 61-2 at 9.) For several reasons, this argument fails.

To begin, the statutory framework that governs here requires the use of LSI *Laffey* rates. Sanchez seeks fees under the DCMWA and DCWPCL. Under those statutes:

> In any judgment in favor of any employee under this section … the court shall award to each attorney for the employee an additional judgment for costs, including attorney's fees computed pursuant to the matrix approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), and updated to account for the current market hourly rates for attorney's services.

D.C. Code § 32-1308(b)(1). The *Salazar* court used the LSI *Laffey* matrix to compute the fee award, so by expressly incorporating *Salazar*, the D.C. Code incorporates the LSI *Laffey* matrix. The cases in this District solidifying this principle are legion. *See, e.g.*, *Herrera v. Mitch O'Hara LLC*, 257 F. Supp. 3d 37, 46 (D.D.C. 2017) ("[T]he statute's plain language *requires* the use of the LSI *Laffey* matrix to determine the applicable rate[s].") (emphasis added); *see also Munoz v. Telligent Masonry LLC*, 2023 WL 6389129, at *4–5 (D.D.C. Oct. 2, 2023) (agreeing the D.C. Code "mandates" use of the LSI *Laffey* rates in awarding fees under those statutes); *Zaldana v. Morrogh*, 2022 WL 203471, at *10 (D.D.C. Jan. 24, 2022) ("D.C. law itself mandates that the Court use LSI *Laffey* rates."); *Stephens v. Farmers Rest. Grp.*, 2019 WL 2550674, at *9 (D.D.C. June 20, 2019) (similar); *Sanchez v. Devashish Hosp., LLC*, 2018 WL 7252898, at *2 (D.D.C.

Dec. 17, 2018) (similar); *Serrano v. Chicken-Out*, 209 F. Supp. 3d 179, 197 (D.D.C. 2016) (similar). This Court joins that chorus, especially considering Defendants fail to cite even a single case departing from this well-settled approach. Because Sanchez seeks an award of fees under the DCMWA and the DCWPCL, the Court is required to use the LSI *Laffey* rates.[3]

Defendants are likewise wrong in arguing that the Court must base its assessment on the rates that Sanchez's counsel typically charge to "normal fee-paying clients." (ECF No. 61-2 at 9.) Decades ago, our Circuit rejected that sort of focus in favor of the "prevailing market method." *Save Our Cumberland Mountains ("SOCM") v. Hodel*, 857 F.2d 1516, 1517 (D.C. Cir. 1988) (en banc) (overruling prior precedent that "courts should calculate the 'reasonably hourly rate' according to the hourly rates charged in similar cases by that firm"); *Makray v. Perez*, 159 F. Supp. 3d 25, 40–41 (D.D.C. 2016) ("To the extent that DOL means to suggest that the plaintiff must demonstrate that her attorneys charge paying clients at rates comparable to her requested reimbursement rate, the agency misunderstands the law of this Circuit."). The "prevailing market method," as the Court of Appeals explained, avoids the "anomaly" whereby a "highly paid commercial for-profit law firm can receive awards equal to its usual handsome rates," while "privately practicing but public interest motivated attorneys who intentionally charge their poorer clients reduced rates" for the same sort of work would end up with far less. *SOCM*, 857 F.2d at

---

[3] There is one potential wrinkle considering that Sanchez also pursued (and prevailed on) claims under the FLSA. Courts in this District often award FLSA fees pursuant to a different *Laffey* matrix: the USAO *Laffey* matrix, which tends to reflect lower rates than the LSI *Laffey* matrix. *See Eley v. Dist. of Columbia*, 793 F.3d 97, 101–02 (D.C. Cir. 2015) (explaining the key differences between the LSI and USAO matrices). The Court is aware of one case in this District that applied a "blend" at the midpoint of the two matrix rates in this circumstance, *Ayub v. Picco*, 2019 WL 11584987, at *4–5 (D.D.C. Jan. 2, 2019), but most courts simply apply the LSI *Laffey* rates without attempting to differentiate between the claims, *see, e.g.*, *Munoz v. Telligent Masonry LLC*, 2023 WL 6389129, at *4–5 (D.D.C. Oct. 2, 2023); *Zaldana v. Morrogh*, 2022 WL 203471, at *10 (D.D.C. Jan. 24, 2022). Here, the Court will not use a midpoint approach to reduce the rates based on Sanchez's companion FLSA claims because not only did Defendants fail to raise this argument, but they also repeatedly downplayed the FLSA claims in arguing for reductions on other grounds.

1520; *see also Eley v. Dist. of Columbia*, 793 F.3d 97, 103 (D.C. Cir. 2015) ("Lawyers who charge reduced rates for certain types of litigation are entitled to receive the same prevailing market rate as private counsel who prevail in equally complex federal litigation.") (cleaned up). These principles hold here, and so the Court focuses on the prevailing market rates as proffered by Sanchez's counsel. *See United States v. Dynamic Visions Inc.*, 307 F.R.D. 299, 303–04 (D.D.C. 2015) ("[F]ee allowances are basically to be measured by the market value of the services rendered, not the amount actually received by the attorney nor the amount that would have been received absent an award of fees.") (citation and quotation marks omitted). Plus, once again, Defendants fail to cite even a single case to support their argument for rate reductions on this basis, let alone any case involving the D.C. wage statutes that dictate application of LSI *Laffey* rates.

Next, Defendants' original response—but not their supplemental brief—insists the Court should use the historical *Laffey* rates in effect when the legal work was completed, not current rates. (ECF No. 55 at 6–7.) To the extent that Defendants are continuing to press this argument, it likewise fails. Under the statute, a court "*shall* use the rates in effect *at the time the determination is made*." D.C. Code § 32-1308(b)(1) (emphases added); *see also Seo v. Oh*, 2024 WL 4381191, at *2 (D.D.C. Oct. 3, 2024) (applying updated *Laffey* rates to account for increases between the motion being filed and the court's "determination").[4] This means current rates, not prior ones.

Finally, Defendants take aim at Edith Thomas's rate, specifically, because of what they describe as her "second chair" role at trial. According to Defendants, the Court should cut Ms. Thomas's hourly rate in half because, otherwise, she would be commanding a rate "well in excess

---

[4] The D.C. wage statutes are not unique in this regard. The "standard approach" in awarding fees is to use current rates, rather than historical rates in effect at the time the work was completed, to attempt to "approximate[] the appropriate adjustment for inflation and thereby simulate[] what the attorney would have earned had she been promptly paid at the time she performed the work." *Brackett v. Mayorkas*, 2023 WL 5094872, at *6 (D.D.C. Aug. 9, 2023) (citations and quotation marks omitted).

7

of what Mr. Amster would be receiving" as a "first chair attorney." (ECF No. 61-2 at 6.) This continues to distort the relevant inquiry. The LSI *Laffey* matrix—which, as the Court has said, controls here—focuses on a lawyer's years of practice experience, not the specific role they played at trial, whether "first chair," "second chair," or otherwise. Once again, Defendants cite zero caselaw in support of their argument, and the Court itself discerns no logical or legal basis to reduce Ms. Thomas's hourly rate simply because she was not lead counsel at trial.

Here, the years of experience and corresponding LSI *Laffey* rates for Sanchez's lawyers (and paralegals)—as applicable both when the motion was filed and currently—are as follows:

| Legal Professional | Years out of Law School[5] | *Laffey* Rate (Filing) | *Laffey* Rate Today |
|---|---|---|---|
| Michael Amster | 16 years | $878 | **$948** |
| Edith Thomas | 21 years | $1,057 | **$1,148** |
| Theodore Godfrey | 31 years | $1,057 | **$1,148** |
| Giovanna Miller | 12 years | $878 | **$948** |
| Charles Tracy | 4 years | $538 | **$581** |
| Paralegal Support | N/A | $239 | **$258** |

Because the Court must apply the rates in effect at the time of its "determination," it approves Sanchez's request to use today's *Laffey* rates for purposes of the fee award.

II.     **Defendants' "Limited Success" Argument**

Defendants' other big-picture argument is that the Court should apply a global "downward adjustment" to the fee award due to Sanchez's supposed "lack of success" on his claims. (ECF No. 61-2 at 10.) As Defendants paint things, Sanchez did not fully prevail because the court found him ineligible for any claim to overtime wages under the FLSA during 2016 and 2017. It is true that a

---

[5] The matrix calculates "years out of law school … from June 1 of each year." (ECF No. 66-2.)

subset of Sanchez's FLSA claims were tossed at summary judgment. But his overtime claims did not sound under the FLSA alone. From the beginning, Sanchez pursued companion claims under both the FLSA and D.C. law (*i.e.*, the DCMWA and DCWPCL), and Sanchez's D.C. wage claims remained fully intact after summary judgment (along with his FLSA claims for 2018 and 2019). And later, at trial, Sanchez ran the table on his D.C. claims, recovering unpaid overtime wages and liquidated damages across the entire four-year period at issue, including 2016 and 2017. By any practical measure, then, Sanchez was fully successful on his claims.

The fact that Sanchez did not prevail on one subset of his legal theories—under one of multiple statutory bases for recovery—does not indicate otherwise. Both the FLSA and the DCMWA require payment of overtime wages to covered employees at the same rate: one and one-half times their regular hourly rate. *See* 29 U.S.C. § 207(a)(1); D.C. Code § 32-1003(c). So, by the time of trial, Sanchez's FLSA claims for unpaid overtime were essentially gratuitous. *See Sanchez*, 2024 WL 3633696, at *8 (recognizing that even though the court's summary-judgment ruling "forecloses some of Sanchez's FLSA damages," it "does not preclude Mr. Sanchez from pursuing damages for the entire period at issue under the DCMWA and DCWPCL") (cleaned up). And as to liquidated damages, the parties stipulated prior to trial that "statutory damages under the FLSA would be duplicative of those damages owed pursuant to the DCMWA and DCWPCL"; they agreed that, if Sanchez prevailed, the court should award relief under D.C. law and not any "duplicative" amount under the FLSA. (*See* ECF No. 45 at 11 n.2.) That is exactly what the court did. *See Sanchez*, 2024 WL 3633696, at *8 (awarding liquidated damages under the DCWPCL and ignoring any "duplicative amount pursuant to federal law"). In other words, the court's trial ruling treated Sanchez's FLSA claims as entirely secondary to his primary D.C. claims.

To be sure, the Court recognizes that it retains discretion to "reduce a fee award to account for limited success." *Izaguirre v. Hunter Allied of Md., Inc.*, 2020 WL 13610597, at *4 (D.D.C. July 31, 2020). But as Defendants' own briefing recognizes, the assessment leading to such a reduction often focuses on the resulting "disparity between the amount of damages sought versus the amount of damages ultimately awarded." *Radtke v. Caschetta*, 254 F. Supp. 3d 163, 170 (D.D.C. 2017) (cited at ECF No. 61-2 at 10–11). And here, Sanchez secured a damages award at trial that redressed the entire period at issue, both as to overtime wages and liquidated damages. Framed appropriately, there is no basis here for a fee reduction based on "limited success."

### III. Defendants' Remaining Arguments

Finally, Defendants mount a handful of targeted attacks against specific categories of legal work submitted by Sanchez's counsel. They argue the Court should: (1) decline to award any fees for work on the case completed by Ms. Thomas on the case (totaling 152.35 hours) because her involvement was supposedly unnecessary; (2) reduce by 75% the hours related to summary judgment; (3) exclude 13.7 hours of time spent preparing for a jury trial (since the parties ultimately agreed to a nonjury trial); (4) strike 3 hours of time related to what they dub "premature collection efforts"; and (5) exclude 8.3 hours of time associated with work by Ms. Miller. (ECF No. 61-2 at 5–8; ECF No. 55 at 5–6.) The Court addresses these arguments in turn.[6]

*First*, Defendants "heavily dispute" Ms. Thomas's work on this matter altogether because they say it was a "relatively straightforward" case that Sanchez's lead counsel, Mr. Amster, "was more than fully equipped and experienced to handle … by his lonesome." (*Id.* at 5.) In turn,

---

[6] The Court's analysis focuses only on the specific arguments pressed by Defendants. *Brackett*, 2023 WL 5094872, at *7 (considering reductions only as to entries for which defendants presented "detailed and specific reasons why the applicant's request should be reduced or denied"); *Beck v. Test Masters Educ. Servs., Inc.*, 73 F. Supp. 3d 12, 17 (D.D.C. 2014) (same). To the extent Defendants gesture at generalized grievances as to supposedly "unproductive, unnecessary, and unreasonable" lawyer time (*see* ECF No. 55 at 2, 4–5)—divorced from any reference to specific time entries—that does not suffice.

Defendants argue the Court should remove all the time Ms. Thomas expended as categorically unreasonable or, at a minimum, remove at least half of her time. This swing-for-the-fences argument misses the mark. Ms. Thomas's involvement in this case was amply reasonable. After all, and as Defendants acknowledge, Mr. Amster handled the "lion's share of the litigation" (*id.*), including at the pleadings stage, during discovery, and through summary judgment. Ms. Thomas only became involved in September 2023, when it was clear the case was headed to trial.[7] The Court does not see anything unreasonable about adding a second-chair trial lawyer at that juncture, even if defense counsel saw fit to try the case solo. Otherwise, apart from their general objection to Ms. Thomas's involvement, Defendants fail to challenge any specific time entries by Ms. Thomas as unreasonable, duplicative of work performed by Mr. Amster (or others), or otherwise improper. The Court will not reduce the requested fees on these grounds.

*Second*, Defendants next argue the Court should award fees for only 25% of the hours that Sanchez's counsel spent on what they call an "unsuccessful" motion for summary judgment, since Sanchez prevailed on only one of the four issues presented (*i.e.*, a 25% success rate). Not so. The Court certainly has discretion to reduce a fee award for time spent on unnecessary filings, especially where a litigant files needlessly duplicative motions, *see, e.g.*, Merrick v. Dist. of Columbia, 134 F. Supp. 3d 328, 336–37 (D.D.C. 2015) (reducing fees, for example, where litigant filed "five different motions to amend a single filing"), or unsuccessful motions that are plainly deficient on their face, *Calliham v. Preventative Measures of Wash. DC, LLC*, 2025 WL 814968, at *10 (D.D.C. Mar. 14, 2025) (denying fees for deficient motions for default judgment, one filed before entry of default and another filed with no evidentiary support). But Sanchez's motion falls

---

[7] Defendants suggest Ms. Thomas's involvement starting in September 2023 occurred "for reasons not immediately clear." (ECF No. 61-2 at 6.) The reason is clear to the Court: with summary judgment in the rear-view mirror and the case headed to trial, Ms. Thomas joined the team to help try the case. This sort of case-staffing development is relatively commonplace and certainly not unique to this case.

comfortably outside those scenarios. Even though he did not prevail at summary judgment on the core issue of whether Defendants improperly misclassified him as overtime exempt, his arguments were a long way from frivolous or facially unsupported. After all, Defendants lost summary judgment on that core issue, too, and Sanchez ultimately prevailed on it at trial. *Cf. Falica v. Advance Tenant Servs., Inc.*, 384 F. Supp. 2d 75, 81 (D.D.C. 2005) (declining to exclude fees spent on unsuccessful summary judgment motion when the motion was "integrally related to the theory upon which the plaintiffs ultimately prevailed"). Defendants' cited cases are not to the contrary. In both, the courts reduced fee awards to account for time on claims the moving party lost altogether at summary judgment, whereas Sanchez prevailed across the board at trial and was simply unsuccessful in proving liability as a matter of law at summary judgment. *In Thomas ex rel. A.T. v. Dist. of Columbia*, 2007 WL 891367, at *5 (D.D.C. Mar. 22, 2007); *Louise Trauma Ctr. LLC v. U.S. Dep't of Justice*, 2024 WL 4227635, at *7 (D.D.C. Sept. 18, 2024).

*Third*, Defendants implore the Court to reject 13.7 hours of time that Sanchez's counsel spent preparing for a jury trial (*i.e.*, drafting jury instructions, proposed *voir dire*, and the like) since the case ultimately went forward as a bench trial with no jury. Defendants insist this reduction is necessary because Sanchez chose to "revoke" his jury demand at the last minute, obviating the value of all that work. But as Sanchez rightly explains, the decision here to dispense with a jury trial was a strategic decision seemingly made in the context of various pretrial rulings, and there is no suggestion that Sanchez made that decision in bad faith. Plus, all the challenged jury-related work occurred *before* the jury demand was withdrawn—certainly if Sanchez's counsel were seeking fees for *voir dire* or jury instructions *after* it was clear there would be no jury, that would be a very different scenario. Under the circumstances here, however, the Court will not exclude fees based on Sanchez's late-breaking strategy to opt for a bench trial instead of a jury trial. *See,*

12

*e.g.*, *K.P. v. Dist. of Columbia*, 2018 WL 6181737, at *3 (D.D.C. Nov. 27, 2018) (declining to second-guess litigation strategy for similar reasons: "the Court will not play Monday-morning quarterback, especially where the team in question won the game.").

*Fourth*, Defendants ask the Court to reduce the fee award by 3 hours to exclude the time Mr. Godfrey spent on "collection" efforts, arguing that the work was "premature and unnecessary" because Defendants paid the judgment in full. Though true that Defendants did fully satisfy the judgment before any collection efforts became necessary, the modest work Mr. Godfrey undertook on those matters does not strike the Court as obviously unreasonable or unnecessary. And once Defendants committed to paying the judgment, any collection-related work ceased.

*Finally*, Defendants contest—again, only in their original opposition but not their supplemental response—8.3 hours of time expended by Ms. Miller as "unreasonable or duplicative." But beyond those buzzwords, Defendants never develop the argument in any meaningful way, much less by way of reference to specific time entries. The Court independently reviewed Ms. Miller's time entries; she seemingly assisted with the preparation of written discovery requests, Rule 26 disclosures, other discovery matters, and some targeted research. The Court fails to appreciate how those efforts are unreasonable or duplicative.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion because Sanchez successfully established an entitlement to recovery of the fees and costs requested, and Defendants failed to show otherwise. As noted, the Court awards fees based on current LSI *Laffey* rates, *supra* at 7–8, to include the additional time Sanchez's counsel spent responding to Defendants' supplemental filing, s*ee, e.g., Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 528 (D.C. Cir.

1985) ("Hours reasonably devoted to a request for fees are compensable."). As such, the Court awards attorneys' fees in the amount of **$542,789.70** and costs in the amount of **$8,946.93**.[8]

The Court will issue a separate accompanying order.


Dated: April 7, 2025

                                        MATTHEW J. SHARBAUGH
                                      United States Magistrate Judge

---

[8] Defendants expressly do not contest the propriety of Sanchez's requested costs (ECF No. 61-2 at 3 n.1), which the Court independently reviewed. The Court will award the full costs requested.